**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DAMIEN PADILLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-00730-GCS** |
| | ) | |
| **ANTHONY WILLS, CARRIE MORRIS, KATIE PHILLIPS, and MS. REGELSPERGER** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

**INTRODUCTION AND BACKGROUND**

Plaintiff Damian Padilla, an inmate of the Illinois Department of Corrections ("IDOC") who was incarcerated at Menard Correctional Center ("Menard") during the time period relevant to this case, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges he experienced unconstitutional conditions of confinement in violation of the 8th Amendment as a result of defendants' deliberate indifference to his mental health needs and inadequate access to out-of-cell time (Doc. 4).

Plaintiff alleges that, while in Restrictive Housing and on Orientation Status, he lacked access to outside recreation and was denied adequate treatment for his mental health needs. (Doc. 4, p. 8-9). Plaintiff alleges he did not receive the conditions and

standards that IDOC's own administrative directives deem as mandatory for Seriously Mentally Ill ("SMI") inmates in segregation. (Doc. 41-3, p. 6). Plaintiff points to IDOC Administrative Directive 05.15.100 which requires a minimum of ten hours of unstructured out-of-cell time per week for SMI inmates. *Id*. Although individuals in both general population and protective custody were allowed to access the yard daily, Plaintiff alleges Defendant Wills denied inmates in restrictive housing access to the yard. (Doc. 4, p. 8). Plaintiff alleges he is designated an SMI inmate, and that the lack of access to the yard, natural air, and sunlight was detrimental to his medical and mental health. *Id*.

Plaintiff filed grievances about his lack of access to recreation and his numerous attempts to receive mental health treatment. *Id*. at p. 6, 11. Plaintiff received responses from the prison grievance counselor indicating that Plaintiff's restricted access to outside recreation was due to extended staff shortages and that Plaintiff was scheduled for meetings with a psychiatrist. (Doc. 41-3, p. 5-9). Plaintiff alleges Defendant Morris responded to those grievances but failed to take any action to allow inmates to access the yard. (Doc. 4, p. 8-9). Plaintiff alleges Defendant Morris was aware of his SMI classification but failed to ensure his access to either the yard or mental health groups. *Id.* at p. 9. Plaintiff also submitted several request slips to Defendant Morris that she failed to act on. Plaintiff alleges his mental health deteriorated as a result of his lack of access to the yard and mental health groups.

On June 3, 2025, the Court conducted a review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on two claims:

**Count 1:** **Eighth Amendment deliberate indifference to conditions of confinement claim against Anthony Wills, Carrie Morris, Katie Phillips, and Ms. Regelsperger[1] for denying Padilla access to out-of-cell time while in segregation.**

**Count 2:** **Eighth Amendment deliberate indifference to mental health needs claim against Anthony Wills, Carrie Morris, Katie Phillips, and Ms. Regelsperger for denying Padilla access to out-of-cell time and/or mental health groups while in segregation.**

(Doc. 11, p. 3, 6).

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Morris and Wills. (Doc. 41). Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to adequately name or describe them and because he failed to describe their actions. Plaintiff filed an opposition to the motion. (Doc. 47). The issue is thus ripe for decision.

## FACTUAL BACKGROUND

The parties agree that two grievances are relevant to the claim in this case. (Doc. 41, p. 3-4; Doc. 47, p. 3):

---

1 Defendant's name was originally misspelled in Plaintiff's complaint as "Relsgelsberger." (Doc. 1, p. 1). Her counsel has indicated that the correct spelling of her name is "Regelsperger." (Doc. 19). Accordingly, the Court refers to her by that name in this Memorandum & Order. The Clerk of Court is directed to correct the name of this Defendant on the Court docket.

***Grievance #K4-1123-1777***

In grievance #K4-1123-1777, Plaintiff complained about a lack of mental health treatment and lack of access to the yard. (Doc. 41-3, p. 3). The complaint does not specifically name Defendant Wills or Defendant Morris. *Id.* The Chief Administrative Officer ("CAO"), Defendant Wills reviewed the grievance on December 1, 2023, and decided that it should not be granted emergency status. (Doc. 41-3, p. 5). Plaintiff then submitted the grievance to a counselor, "S. Lewis," on December 4, 2023. *Id*. The counselor responded on June 12, 2024. *Id*. The Grievance Officer, "Jacob Guetersloh," and the CAO, "Kevin Reichert," reviewed and denied the grievance on July 17, 2024. *Id.* at p. 3. Plaintiff appealed to the ARB on August 1, 2024. *Id*. The ARB denied the grievance on December 10, 2024, finding that the issue was appropriately addressed by the facility administration. *Id.* at p. 2.

***Grievance #K4-1123-1778***

In grievance #K4-1123-1778, Plaintiff complained about a lack of out-of-cell time and denial of yard privileges. The complaint does not specifically name Defendant Wills or Defendant Morris. The Chief Administrative Officer ("CAO"), Defendant Wills reviewed the grievance on December 1, 2023, and decided that it should not be granted emergency status. (Doc. 41-3, p. 11). Plaintiff then submitted the grievance to a counselor on December 4, 2023. *Id*. The counselor responded on January 10, 2024. *Id*. The Grievance Officer and the CAO, reviewed and denied the grievance on March 26, 2024. *Id*. at p. 9.

Plaintiff appealed to the ARB on May 13, 2024. *Id*. The ARB denied the grievance on September 3, 2024, finding that the issue was appropriately addressed by the facility administration. *Id*. at p. 8.

## Legal Standards

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* Fed. R. Civ. Proc. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome of such a motion. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, the Court must determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to

exhaust was innocent. *Id.* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Padilla is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's Grievance Procedures to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or

procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and

recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by the PLRA because his grievances did not identify them specifically or complain about their specific conduct. (Doc. 41, p. 8-9). This case is similar to *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011). There, the Seventh Circuit held that an inmate's failure to name or describe the defendants, a prison chaplain and prison wardens, in his grievance concerning denial of religious fellowship did not bar his claim where prison administrators resolved his grievance on the merits and did not reject it for procedural deficiencies. *See Maddox*, 655 F.3d at 722. The Seventh Circuit explained that the PLRA's exhaustion requirement is designed to provide prison officials an opportunity to address inmate complaints internally, rather than serve as a procedural trap that bars meritorious claims. *Id.* When prison officials review a grievance on the merits rather than rejecting it for procedural defects, the Seventh Circuit held that the grievance has fulfilled

its purpose under the PLRA, such that defendants cannot later argue non-exhaustion. *Id.* Furthermore, the *Maddox* court reasoned that a grievance need only provide enough information to allow prison officials to investigate the issue, even if a specific defendant is not explicitly named in the original grievance. *Id.* It observed that providing early notice to individuals who might later be sued is not one of the main purposes of the exhaustion requitement. *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Applying the Seventh Circuit's reasoning from *Maddox*, the Court finds that Plaintiff exhausted his administrative remedies against Defendants Morris and Wills. Plaintiff's grievances provided more than sufficient notice to prison officials that he was being denied out-of-cell time and had not been able to access mental health care. For example, in Grievance K4-1123-1777, Plaintiff wrote that he had not been permitted to participate in mental health programming for two months despite frequently asking to do so and that he had been denied all recreational opportunities from May 2023 to November 2023. (Doc. 41-3, p. 5-6). Grievance K4-1123-1778 included similar claims: Plaintiff had not been able to sign up for mental health programs and had been totally denied out-of-cell time. *Id.* at p. 11. Menard denied these grievances relying on administrative directives, one of which expressly put the decision to restrict recreational time at the discretion of Defendant Wills. *Id.* at p. 3, 9. This indicates that Menard understood Plaintiff's grievances to involve policies and decisions made at the administrative level. And, as in *Maddox*, neither Menard nor the ARB denied Plaintiff's

grievances on procedural grounds. Because Plaintiff put Menard on notice about his lack of access to mental health programming and recreational time, and because neither grievance was alleged to be procedurally deficient by Menard or by the ARB, Plaintiff exhausted his administrative grievances against Defendants Morris and Wills.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by Defendants Morris and Wills is **DENIED**. The Court will enter a merits scheduling order in due course.

**IT IS SO ORDERED.**

**DATED: September 22, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.22 13:43:34 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**